**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge William J. Martínez**

Civil Action No. 19-cv-1251-WJM-SKC

SHANNON LUCAS,

     Plaintiff,

v.

THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY FOR LARIMER
COUNTY COLORADO;
LARIMER COUNTY COMMUNITY CORRECTIONS BOARD;
LARIMER COUNTY COMMUNITY CORRECTIONS;
LARIMER COUNTY PROBATION DEPARTMENT;
GARY DARLING, Division Director, Criminal Justice Services, in his individual and
official capacities;
TIM HAND, Director, Larimer County Community Corrections, individually;
DANA HERSCH, Assistant Director, Larimer County Community Corrections,
individually;
MASON KOPP, Program Team Lead, Larimer County Community Corrections,
individually;
ERIN CALDWELL, Program Team Lead, Larimer County Community Corrections,
individually;
GWEN ASH, Case Manager, Larimer County Community Corrections, individually;
LAUREN HAND, Staff Member, Larimer County Community Corrections, individually,

     Defendants.

---

**ORDER GRANTING THE LARIMER COUNTY DEFENDANTS' COMBINED MOTION**
**TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT AND JURY DEMAND,**
**AND GRANTING LARIMER COUNTY PROBATION DEPARTMENT'S**
**MOTION TO DISMISS**

---

This civil rights action is before the Court on: (1) Defendants Board of County

Commissioners for Larimer County Colorado ("BOCC"), Larimer County Community

Corrections Board ("LCCCB"), Larimer County Community Corrections ("LCCC"), and

Defendants Gary Darling, Tim Hand, Dana Hersch, Mason Kopp, Erin Caldwell, Gwen

Ash, and Lauren Hand's, in their official and individual capacities[1] (collectively, "Larimer County Defendants"), Motion to Dismiss Plaintiff Shannon Lucas's Second Amended Complaint and Jury Demand ("Larimer County Defendants' Motion to Dismiss") (ECF No. 81); and (2) Defendant Larimer County Probation Department's ("LCPD") Motion to Dismiss ("LCPD's Motion to Dismiss") (ECF No. 83).  Lucas responded in opposition (ECF Nos. 84, 85), and the Larimer County Defendants and LCPD replied (ECF Nos. 87, 88).  For the following reasons, the Larimer County Defendants' Motion to Dismiss and LCPD's Motion to Dismiss are granted.

## I. BACKGROUND

The following factual summary is drawn from Lucas's Second Amended Complaint ("SAC") (ECF No. 62), except where otherwise stated.  The Court assumes the allegations contained in the SAC are true for the purpose of deciding both Motions to Dismiss.  *See Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

On July 19, 2018, a court[2] referred Lucas for evaluation and placement in community corrections, and on September 17, 2018, LCCCB accepted her for placement in the residential facility at LCCC, a county-run facility and department of Larimer County, Colorado.  (¶¶ 10, 37.)[3]  On October 5, 2018, the court sentenced

---

[1] Lucas sues all of the individual defendants in their individual capacities only, except that she sues Gary Darling, Division Director, Criminal Justice Services, in both his individual and official capacities.  (ECF No. 62.)

[2] The complaint does not specify what court handled Lucas's case or the grounds for her underlying conviction.

[3] Citations to paragraph numbers, without more, *e.g.* (¶ __), are citations to the SAC. (ECF No. 62.)

Lucas to community corrections, and she reported to LCCC on October 9, 2018.  (¶ 38.)
LCCC assigned Case Manager Gwen Ash to Lucas's case.  (*Id.*)

Before becoming a resident of LCCC, Lucas was diagnosed with post traumatic
stress syndrome and anxiety with panic disorder and was prescribed Klonopin, a Class
IV controlled substance.  (¶¶ 20–21.)  LCCCB's evaluation report stated Lucas needed
to continue mental health treatment but did not recommend a substance abuse
evaluation or treatment.  (¶ 37.)

LCCC is responsible for the proper administration of medication for the
residential facility and handles storing, logging, and providing medication to its residents
without employing pharmacists or other medical personnel to handle medications.
(¶ 28.)  On entering the facility, residents must turn over all prescription
medication—sealed in its original pharmacy packaging—to staff, who enter the
medication type, dosage, and pill count into the computer software system.  (¶ 29.)
Only LCCC staff are permitted access to prescription medications; residents cannot
access medications without supervision and are heavily monitored by LCCC staff during
administration and ingestion of prescription medications.  (¶¶ 30, 32.)

On October 14, 2018, Lucas suspected some of her Klonopin tablets were
missing, which raised concerns for her about withdrawal if she ran out of pills.  (¶ 41.)
She informed Ash, who advised her to start taking fewer tablets so they would last until
the next refill.  (*Id.*)  No one counted the tablets from October 9 to October 19, 2018,
but on October 19, 2018, Lucas requested an audit of her remaining pills, and it was
confirmed that six pills were missing.  (¶¶ 42, 44.)

LCCC Program Team Leader Erin Caldwell, Ash, and LCCC Assistant Director

3

Dana Hersch "plotted and planned to continue to deny Ms. Lucas prescription medication and to destroy or cover up any evidence placing blame on staff."  (¶ 46.)  On October 18, 2018, they exchanged e-mails regarding the whereabouts of Lucas's Klonopin, and Caldwell wrote, "Then we can put this on Lucas.  Let me know if I can help with anything else.  Don't fret though.  Your [*sic*] good."[4]  (¶ 46.)  LCCC Director Tim Hand[5] and Hersch were aware of "systemic failures" concerning the administration of medications at the facility, including incorrect audits, misplaced medications, and direct evidence of missing, lost or stolen medication.  (¶ 47.)  Tim Hand and Hersch were notified and provided evidence proving that narcotic pills were being diverted and that Lucas was not responsible, but they did not take corrective actions.  (¶ 48.)

Under these circumstances, Lucas was denied her medication as prescribed, forced to miss doses and reduce the dosage too quickly, without medical advice or oversight, and as a result, suffered benzodiazepine withdrawal.  (¶ 49.)  Her symptoms included severe panic and anxiety, significant weight loss, changes in vital signs, insomnia, dizziness, stomach pain, confusion, and cognitive disturbances.  (*Id*.)  She scheduled a doctor's appointment to request an early refill of her medication, and on October 19, 2018, she received and filled a new prescription for 90 Klonopin pills. (¶ 50.)

On October 31, 2018, Lucas again believed pills were missing and asked LCCC

---

[4] Lucas did not attach the e-mails as an exhibit to the SAC.  However, the Larimer County Defendants provided the e-mails as an exhibit to their Motion to Dismiss.  (ECF No. 81-1.)

[5] Because two defendants have the last name "Hand," to avoid confusion, the Court will refer to them by their first and last names.

Program Team Lead Mason Kopp for an audit of her medication; when the pills were counted, it was discovered 28 pills were missing.  (¶ 51.)  That day, Lucas filed a police report with the Larimer County Sheriff's Office to report that LCCC staff had stolen her medication.  (¶ 52.)  In addition, she filed a similar grievance against LCCC regarding her stolen medication.  (*Id.*)

Deputy Aaron Hawks spoke with Kopp about the complaint regarding the missing medication and her accusations of theft against the staff, and Kopp accused Lucas of being untruthful and alleged Lucas stole the medication to support a substance abuse problem.  (¶¶ 53–54.)  Kopp falsely claimed Lucas completed a substance abuse evaluation and "scored out," implying Lucas required a higher level of substance abuse treatment because of dependency issues; he also accused her of "doctor shopping." (¶¶ 54, 55, 57.)

Lucas was ultimately charged with a "101 law violation," a class 1 offense at LCCC for falsely reporting that LCCC staff stole her medication, though Deputy Hawks did not initiate criminal charges.[6]  (¶ 60.)  The LCCCB found Lucas guilty of false reporting and sentenced her to restricted phone privileges, lockdown, and an additional 25 days in the residential facility.  (*Id.*)  Lucas appealed the disciplinary findings, but on November 5, 2018, Hersch denied the appeal and grievance, reasoning "'we do not dispense medication and would not have been responsible for administering the

---

[6] Because Lucas uses the passive voice in the SAC, it is not clear who decided to charge Lucas with the 101 law violation.  (*See* ¶ 60 ("Ultimately, Deputy Hawks, did not initiate criminal charges against Ms. Lucas.  Yet she was still charged with a '101 law violation', a class 1 offense at LCCC for 'false reporting' based on the allegations concerning staff members stealing Klonopin pills from Ms. Lucas's prescription bottle.").)

medication.'" (¶ 61.)

Following an exacerbation of symptoms, on November 6, 2018, Lucas decided to begin tapering off Klonopin under doctor supervision because she feared continued theft and retaliation by LCCC.  (¶¶ 63–65.)  On November 12, 2018, Lucas's physician, Benjamin Smith, M.D., spoke with LCCC staff regarding Lucas's missing medication, and LCCC staff admitted to Dr. Smith that medication was being diverted at the facility. (¶ 67.)

On March 14, 2019, Lucas refilled her prescription for 14 tablets, but after giving the package to LCCC Staff Member Lauren Hand, she was notified there were only 12 pills in the bottle.[7]  (¶ 68.)  Lucas verified the pharmacy dispensed 14 tablets, and the next day Lauren Hand harassed Lucas in the bathroom while she showered alone, and threatened disciplinary action if Lucas reported the missing medication.  (¶¶ 69–70.) Lauren Hand falsified the medication intake form by writing a false intake prescription for 12 pills and forging Lucas's signature.  (¶ 72.)  Lucas did not see or sign the medication intake form or receive a Klonopin prescription for only 12 tablets.  (¶ 73.) Pharmacy records show Lucas picked up her prescription for 14 tablets on February 3, 2019, and she gave it to the LCCC staff at the medication desk.  (¶ 74.)

---

[7] Lauren Hand is the daughter of Tim Hand and has a history of drug abuse and addiction to oxycodone and heroin.  She has weaned herself off heroin using suboxone and now takes Klonopin for anxiety.  (¶ 71.)

Tim Hand knew about Lauren Hand's history of substance abuse and addiction to prescription medication when she was hired at LCCC and, nonetheless, permitted her to work unsupervised at the medication desk, where she had access to narcotic medications. (¶¶ 75–76.)

On May 25, 2019, Lauren Hand was criminally charged in Larimer County Court with First Degree Official Misconduct, Possession of a Controlled Substance, and Theft. (¶ 79.)  The Larimer County Sheriff's Office report states she stole a bottle of Lorazepam from LCCC resident Shandi Brainard.  (¶ 80.)

Tim Hand was aware of the inaccurate medication counts, unmonitored staff access to prescription medication, failures in reporting, failures in medication administration, interference, and denial of residents' prescription medications.  (¶ 77.) Further, Tim Hand knew Lucas was missing a significant amount of Klonopin tablets on several occasions.  (*Id.*)

Lucas also alleges that around September 17, 2018, Miston Compton, a former resident of LCCC, reported that while residing at LCCC, she received a prescription for 20 pills of Oxycodone (a Schedule II controlled substance) but discovered two pills were missing and that she was being charged with an administrative disciplinary write up for misuse of her medication.  (¶ 87.)  Compton did not steal or misuse her medication and pled not guilty to the write up.  (*Id.*)  The charges were dismissed without further explanation or investigation after a review of video surveillance proved Compton was innocent.  (*Id.*)

On November 5, 2018, Jerica Nealy, a former resident of LCCC, reported that while residing at LCCC, an entire bottle of her prescription medication for Vyvanse (a Schedule II controlled substance) went missing from the facility without explanation or investigation.  (¶ 88.)

Lucas alleges that in 2015, the *Westword* published an article concerning the "failures and deplorable conditions of Colorado halfway houses."  (¶ 82.)  Complaints included vindictive or poorly trained staff and drug use.  One female resident in Denver reported "continual issues with missing prescription medications" and fear of filing grievances "due to staff retaliation."  (*Id.*)

In June 2015, the Division of Criminal Justice Office of Community Corrections

published an audit of Phoenix Center Halfway House in Henderson, Colorado, citing numerous areas of non-compliance, including staff members ignoring client complaints. (¶ 83.)  Staff misconduct was unreported for fear of retaliation.  (*Id.*)  Further, resident prescription medications were not properly secured.  (*Id.*)

In 2016, the Division of Criminal Justice Office of Community Corrections released a limited scope audit of LCCC's compliance standards for the residential program.  (¶ 84.)  This audit is the most recent published report of LCCC's residential program.  (¶ 86.)  LCCC's security standards regarding medication was "only partially compliant," with "inaccurate medication counts," and staff's failure to follow proper procedures for medication administration.  (¶ 84.)

On April 30, 2019, Lucas filed this civil rights lawsuit against the Larimer County Defendants and LCPD.  (ECF No. 1.)  She filed an Amended Complaint on July 15, 2019 (ECF No. 22) and was granted leave to file the SAC on November 20, 2019 (ECF No. 68).  In the SAC, Lucas brings three claims: (1) First Amendment retaliation under 42 U.S.C. § 1983 against All Defendants; (2) Eighth Amendment violation for failure to provide medical care and treatment under 42 U.S.C. § 1983 against All Defendants; and conspiracy under 42 U.S.C. § 1983 against All Individually Named Defendants. (¶¶ 89–125.)

On January 31, 2020, the Larimer County Defendants filed their Motion to Dismiss.  (ECF No. 81.)  On February 3, 2020, LCPD filed its Motion to Dismiss.  (ECF No. 83.)

## II. LEGAL STANDARDS

**A.      Federal Rule of Civil Procedure 12(b)(1)**

As courts of limited jurisdiction, federal courts may only adjudicate cases that the Constitution and Congress have granted them authority to hear.  *See* U.S. Const. art. III, § 2; *Morris v. City of Hobart*, 39 F.3d 1105, 1111 (10th Cir. 1994).  Statutes conferring jurisdiction on federal courts must be construed strictly.  *See F&S Constr. Co. v. Jensen*, 337 F.2d 160, 161 (10th Cir. 1964).

Federal Rule of Civil Procedure 12(b)(1) empowers a court to dismiss a complaint for "lack of jurisdiction over the subject matter."  A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusionary allegations of jurisdiction."  *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971).  A party challenging the Court's jurisdiction may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends.  *See Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995).  When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. *See id.*  A court has wide discretion to allow affidavits, other documents, and may conduct a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1).  *See id.*

**B.      Federal Rule of Civil Procedure 12(b)(6)**

Under Rule 12(b)(6), a party may move to dismiss a claim in a complaint for "failure to state a claim upon which relief can be granted."  A "court's function on a Rule

12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."  *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (internal quotation marks omitted).

The Rule 12(b)(6) standard requires the Court to "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff."  *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).  Thus, in ruling on a motion to dismiss under Rule 12(b)(6), the dispositive inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001) ("[I]n deciding a motion to dismiss pursuant to Rule 12(b)(6), a court may look both to the complaint itself and to any documents attached as exhibits to the complaint.").

Granting a motion to dismiss "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice."  *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (internal quotation marks omitted).  "Thus, 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'"  *Id.* (quoting *Twombly*, 550 U.S. at 556).  However, "[t]he burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief."  *Robbins v.*

*Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).

"[C]omplaints that are no more than 'labels and conclusions' or 'a formulaic recitation of

the elements of a cause of action,' . . . 'will not do.'"  *Id.* (quoting *Twombly*, 550 U.S. at

555).

### III. ANALYSIS

**A.    The Larimer County Defendants' Motion to Dismiss**

    1.    § 1983 - First Amendment Retaliation

Lucas asserts a First Amendment retaliation claim based on her disciplinary

conviction at LCCC for engaging in constitutionally protected speech—filing a police

report with the Larimer County Sheriff's Office stating LCCC staff were stealing her

controlled substance prescription medication.  (¶¶ 52, 60, 89–105.)  She also filed a

similar grievance against LCCC regarding her stolen medication.  (¶ 52.)  Following an

investigation by Deputy Hawks, Lucas was charged with a "101 law violation," a class 1

offense at LCCC for "false reporting."  (¶ 60.)  The LCCCB found Lucas guilty of false

reporting and sentenced her to restricted phone privileges, lock down, and an additional

25 days in the residential facility.  (*Id.*)  Lucas appealed the disciplinary findings, but on

November 5, 2018, Hersch denied her appeal and grievance.  (¶ 61.)  In retaliation for

Lucas's constitutionally protected speech in filing the police report, the Larimer County

Defendants allegedly harassed her, threatened criminal charges and imposition of a

maximum prison sentence, took unwarranted discipline action against her by hindering

her ability to file for early termination of her sentence, and added 25 days of time under

residential supervision.  (¶¶ 93–94.)  Specifically, Lucas alleges the retaliation "was

motivated by [her] constitutionally protected expression of reporting the theft of her prescription medication," and that "she was disciplined for a 101-law violation of filing a false police report."  (¶ 94.)

The Larimer County Defendants argue that Lucas's First Amendment retaliation claim must be dismissed because she has not alleged that the disciplinary action resulting in 25 extra days of incarceration has been reversed, expunged, or set aside, or otherwise invalidated, and accordingly, her claim is barred by the doctrines set forth in *Heck v. Humphrey*, 512 U.S. 477 (1994)*, and *Edwards v. Balisok*, 520 U.S. 641 (1997).  (ECF No. 81 at 13–14.)  Because a finding in favor of Lucas on the First Amendment retaliation claim would necessarily imply the invalidity of her disciplinary conviction, the Larimer County Defendants argue the claim is barred.  (*Id.* at 14.)

In response, Lucas argues that she is "not alleging a claim that would overturn her conviction" and "a judgment [in her favor] would not invalidate the state court sentence."  (ECF No. 84 at 8.)  For support, she relies on *Cohen v. Longshore*, in which the Tenth Circuit determined "that a petitioner who has no available remedy in habeas, through no lack of diligence on his part, is not barred by *Heck* from pursuing a § 1983 claim."  621 F.3d 1311, 1317 (10th Cir. 2010).

The Larimer County Defendants reply that Lucas misinterprets their argument under *Heck*.  (ECF No. 87 at 7–8.)  While Lucas correctly stated in her response that a judgment in her favor on her First Amendment retaliation claim would not invalidate her state court conviction, that conviction is not the conviction subject to the Larimer County Defendants' argument.  Instead, these Defendants contend that the disciplinary conviction for falsely reporting the theft of her medication is at issue, and is the

12

conviction which triggers application of *Heck*.  In addition, the Larimer County

Defendants argue Lucas's reliance on *Cohen* is misplaced, stating that "unlike the

Plaintiff in *Cohen*, Plaintiff Lucas was not denied any habeas remedy as her disciplinary

conviction was subject to a hearing and an appeal of that hearing by LCCC personnel."

(*Id.* (citing ¶¶ 60–61).)

 In *Heck*, the Supreme Court addressed the issue of when a prisoner may assert

a § 1983 claim relating to her conviction or sentence.  *Heck* held that a prisoner's claim

for damages is not cognizable under § 1983 if a judgment in the plaintiff's favor would

imply the invalidity of his conviction or sentence.  *Heck*, 512 U.S. at 487.  A prisoner

can avoid this prohibition only by showing his conviction or sentence has been

overturned or otherwise invalidated.  *Id.*  In *Edwards*, the Supreme Court expanded this

rule to prison disciplinary convictions that impact the prisoner's conviction or the

duration of his sentence.  *See Edwards*, 520 U.S. at 643.

 In *Muhammad v. Close*, the Supreme Court addressed the applicability of *Heck*

and *Edwards* to a § 1983 suit challenging a prisoner's segregation prior to a disciplinary

hearing where he was acquitted of the charged offense and thus lost no earned credits.

540 U.S. 749 (2004) (per curiam).  Under *Muhammad*, *Heck* does not bar a prisoner's

§ 1983 suit when a favorable verdict would not affect his conviction or the duration of

his sentence.  *Id.* at 751.  Because the petitioner lost no good-time credits as a result of

the challenged action, his § 1983 suit "could not therefore be construed as seeking a

judgment at odds with his conviction or . . . time to be served in accordance with the

underlying sentence."  *Id.* at 754–55.  In other words, the Supreme Court found that

because the petitioner raised no claim on which habeas relief could have been granted—*i.e.*, his § 1983 suit did not threaten his "conviction or the duration of his sentence"—"*Heck*'s favorable termination requirement was inapplicable." *Id.* at 751, 755.

That a plaintiff is no longer in custody does not appear to preclude *Heck*'s application. *See Cohen*, 621 F.3d at 1315, 1317 (recognizing that "[t]he circuits have split on the question of whether the *Heck* favorable-termination requirement applies when the plaintiff lacks an available habeas remedy" but concluding that "a petitioner who has no available remedy in habeas, through no lack of diligence on his part, is not barred by *Heck* from pursuing a § 1983 claim"). However, various district courts in the Tenth Circuit have observed that when a plaintiff has available state post-conviction remedies to challenge the validity of his convictions and sentences, the fact that plaintiff is no longer in custody is not determinative. *See, e.g.*, *Harper v. Woodward Cnty. Bd. of Cnty. Comm'rs*, 2016 WL 4487704, at *5 (W.D. Okla. May 17, 2016), *report and recommendation adopted*, 2016 WL 4491540 (W.D. Okla. Aug. 25, 2016) (dismissing § 1983 due process claim under *Heck* where the plaintiff had available state post-conviction remedies to challenge the validity of his convictions and sentences); *McFadden v. City of Midwest City*, 2014 WL 798013, at *2 (W.D. Okla. Feb. 27, 2014) (noting that "neither [*Spencer v. Kemna*, 523 U.S. 1 (1998)[8]] nor *Cohen* appear to have involved the circumstances present here—where an available means exists under state

---

[8] In *Spencer*, the plurality opinion concluded that a former prisoner no longer in custody could bring a § 1983 action, without being bound to satisfy the "favorable termination" requirement of *Heck*, because it was a requirement that "would be impossible as a matter of law for him to satisfy." 523 U.S. at 21.

law for challenging the conviction involved, regardless of the availability of a federal habeas remedy or of plaintiff's custodial status").

In *Taylor v. City of Bixby*, 2012 WL 6115051, at *6 (N.D. Okla. Dec. 10, 2012), the court observed that the Tenth Circuit has not addressed whether a plaintiff is barred by *Heck* where he has no available habeas remedy but has other relief potentially available in state court.  *See also McFadden*, 2014 WL 798013, at *2 (same).  The court adopted the Eleventh Circuit's conclusion that *Heck* applies even where habeas is unavailable, if there is another route for a plaintiff to seek relief from his conviction. *Taylor*, 2012 WL 6115051, at *6 (citing *Domotor v. Wennett*, 356 F. App'x 316 (11th Cir. 2009) (adopting the district court's finding that "even though a habeas corpus action is currently unavailable to Plaintiff here, [she] was not without an avenue to seek relief from [her] conviction," and her claims should therefore be dismissed)).  Similarly, the *McFadden* court observed that applying *Heck* where a plaintiff has another route to seek relief from his conviction was "consistent with *Heck*'s purpose."  *McFadden*, 2014 WL 798013, at *3.  By finding that *Heck* applied, the court noted that its "conclusion leaves plaintiff with a potentially available remedy for her claimed constitutional violations and affords the state an opportunity to cure any such violations."  *Id.* (observing plaintiff had an available state remedy through the Oklahoma Uniform Post-Conviction Procedure Act).

Here, Lucas brings her § 1983 First Amendment retaliation claim based on her disciplinary conviction that extended her sentence at LCCC by 25 days.  It is undisputed that she has failed to allege that the disciplinary conviction was expunged or otherwise

invalidated.  It is also undisputed that Lucas is no longer in custody and therefore a habeas remedy is unavailable to her.  While it is clear that Lucas appealed the disciplinary conviction to the LCCCB and received an unfavorable decision (¶ 61), the SAC does not allege whether she filed for habeas relief while incarcerated or appealed her conviction in state court.[9]  As such, she potentially has other relief available in state court.  Thus, based on the allegations in the SAC, the *Heck* bar applies.

Because *Heck* applies, the Court must address whether Lucas's claim would necessarily imply the invalidity of her disciplinary conviction or sentence.  Here, a ruling that Lucas was retaliated against for exercising her constitutional right to free speech by filing a false police report would necessarily invalidate her disciplinary conviction, which was based on the police report.

To the extent Lucas argues that *Heck* does not apply because a finding in her favor would not invalidate the state court sentence, her argument is unavailing.  In *Butler v. Compton*, 482 F.3d 1277, 1279 (10th Cir. 2007), the Tenth Circuit held that the conviction that matters under *Muhammad* and *Heck* is the conviction tied "to the conduct alleged in the § 1983 action."  The conduct Lucas challenges relates to her disciplinary conviction, not her original state court conviction, and therefore her § 1983 action threatens the validity of her disciplinary conviction. Thus, it would appear *Muhammad* does not preclude the application of *Heck* to Lucas's § 1983 claims.  *See*

---

[9] It appears as though Lucas has available post-conviction relief in state court. Colo. Rev. Stat. § 18-1-410 (postconviction remedy statute providing that "[n]otwithstanding the fact that no review of a conviction of crime was sought by appeal within the time prescribed therefor, or that a judgment of conviction was affirmed upon appeal, every person convicted of a crime is entitled as a matter of right to make applications for postconviction review").

16

*Harrison v. Morton*, 490 F. App'x 988, 992 (10th Cir. 2012).

The Court thus grants the Larimer County Defendants' Motion to Dismiss with respect to these claims, and dismisses Lucas's § 1983 First Amendment claims against All Defendants without prejudice.[10] [11]

### 2.   § 1983 - Eighth Amendment Violation for Failure to Provide Medical Care and Treatment

The Larimer County Defendants argue that Lucas's Eighth Amendment claim for failure to provide medical care and treatment should be dismissed for failure to state a claim.  (ECF No. 81 at 14–16.)  As an initial matter, they underscore that Lucas has not pled any facts establishing that she was actually denied any medical care or treatment at LCCC.  At most, they argue, she has alleged that some medication was missing, but she has failed to connect the missing medication to her missing doses.  (*Id.* at 15 (citing ¶¶ 44, 51).)  Additionally, they contend that Lucas's doctor's appointment and request for an early refill of her medication undermines her allegations of missing numerous doses.  (*Id.* at 15–16.)  Moreover, they argue temporary denials of medications cannot serve as the basis for a deliberate indifference claim.

In response, Lucas argues the Larimer County Defendants do not dispute that she had a sufficiently serious medical need.  (ECF No. 84 at 9.)  She asserts her case involves "significant and continual interference and denial of medical care over an

---

[10] "[C]laims dismissed on *Heck v. Humphrey* grounds should be dismissed without prejudice."  *Bryner v. Utah*, 429 F. App'x 739, 744–45 (10th Cir. 2011).

[11] Though the parties do not address this issue, to the extent Lucas has asserted a declaratory or equitable relief claim, the Court dismisses such claim without prejudice under Rule 12(b)(6) as Lucas has not explained what declaratory or equitable relief she seeks, beyond summarily stating in her Prayer for Relief that she seeks it.

extended period of time (six months), causing [her] considerable amounts of physical

and mental pain."  (ECF No. 84 at 9.)  For support, she cites paragraphs 63 through 66

and 70 of the SAC and argues the Larimer County Defendants continued acting with

deliberate indifference, despite her repeated complaints regarding mismanagement and

theft of her prescription medication, and despite evidence that she was being truthful.[12]

(*Id.*)

The Eighth Amendment prohibits cruel and unusual punishment.  U.S. Const.

amend. VIII.  This prohibition "extends to 'the unnecessary and wanton infliction of pain'

caused by prison officials' 'deliberate indifference to serious medical needs of

prisoners.'"  *Al-Turki v. Robinson*, 762 F.3d 1188, 1192 (10th Cir. 2014) (quoting *Estelle

v. Gamble*, 429 U.S. 97, 104 (1976)).  "A claim of deliberate indifference includes both

an objective and a subjective component."  *Id.* (quoting *Mata v. Saiz*, 427 F.3d 745, 751

(10th Cir. 2005)).  The objective prong examines "whether the prisoner's medical

condition was sufficiently serious to be cognizable under the Cruel and Unusual

Punishment Clause."  *Id.* (internal quotation marks omitted).  The subjective component

examines the state of mind of the defendant, asking whether "the official knew of and

disregarded an excessive risk to inmate health or safety."  *Id.* (quoting *Farmer v.

Brennan*, 511 U.S. 825, 837 (1994) (internal alterations omitted)).  Under this standard,

"the official must both be aware of facts from which the inference could be drawn that a

substantial risk of serious harm exists, and he must also draw the inference."  *Farmer*,

511 U.S. at 837.  "Deliberate indifference requires a higher degree of fault than

---

[12] She otherwise fails to point to Court toward what specific factual allegations in the SAC support her Eighth Amendment claim.

negligence or even gross negligence." *Richardson v. Butler*, 2014 WL 700177, at *9 (D. Colo. Feb. 20, 2014) (citing *Berry v. City of Muskogee, Okla.*, 900 F.2d 1489, 1495–96 (10th Cir.1990)).

The Court agrees that Lucas has failed to state a claim that all Defendants violated her Eighth Amendment rights.  The Larimer County Defendants point out that Lucas has failed to plead facts establishing that she was denied medical care or treatment.  (ECF No. 87 at 8–9.)  Instead, she alleges some of her medication was missing at some point, but she has failed to sufficiently connect the instances of missing medication with missed doses.  As the Larimer County Defendants emphasize, the only facts alleged in the SAC that Lucas skipped doses relate to her decision to begin tapering off her Klonopin under her doctor's supervision, which does not amount to a denial of medical care or deliberate indifference.  (*Id.* at 9 (citing ¶¶ 62, 65).)  Moreover, in her response, Lucas fails to specifically address this contention; rather, she generally avers that she has alleged "significant and continual interference and denial of medical care over an extended period of time (six months), causing Ms. Lucas considerable amounts of physical and mental pain."  (ECF No. 84 at 9 (citing ¶¶ 63–66, 70).)[13]  She also conclusorily states that the SAC contains 71 detailed factual allegations supporting her claim but does not cite specific paragraphs for support.  (*Id.* at 10.)  Given these factually-deficient allegations, Lucas has failed to state a claim that the Larimer County Defendants denied her medical treatment or acted with deliberate indifference.

---

[13] Paragraphs 63–66 and 70 describe Lucas's physical and mental pain but do not sufficiently link missing medication to missed doses.

As to the individually named Defendants, the Court notes that her claim also falters on the subjective component of same.  Lucas alleges that "At all times relevant to the allegations in this Complaint, named Defendants knew or should have known of Ms. Lucas's medical diagnosis and possibly life-threatening withdrawal symptoms." (¶ 108.)  She also alleges that "All individually named Defendants knew that Ms. Lucas was not receiving her Klonopin tablets as prescribed.  Defendants knew Ms. Lucas was missing doses as prescribed, due to the theft, by LCCC staff, of significant amounts of her prescription medication."  (¶ 115.)  But a complaint must "make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations" against the entire group of defendants.  *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011).  Based on the allegations in the SAC, the Court cannot reasonably infer that each of the Larimer County Defendants—none of whom are alleged to be medical professionals—were aware of facts from which the inference could be drawn that a substantial risk of serious harm to Lucas existed, and also drew that inference.  *See Martinez v. Beggs*, 563 F.3d 1082, 1089 (10th Cir. 2009) ("[T]he Supreme Court has cautioned that an obvious risk cannot conclusively establish an inference that the official subjectively knew of the substantial risk of harm, because 'a prison official may show that the obvious escaped him.'") (quoting *Farmer,* 511 U.S. at 843 n.8)).

The Court thus grants the Larimer County Defendants' Motion to Dismiss with respect to these claims, and dismisses Lucas's § 1983 Eighth Amendment claims against the Larimer County Defendants without prejudice.

3.      § 1983 - Conspiracy

Lucas alleges that all individually named Defendants engaged in a § 1983 conspiracy, whereby "[t]here were express and implied agreements between all individually named Defendants to deprive Ms. Lucas of her constitutional rights and all individually named Defendants acted in furtherance of the agreement." (¶ 122.) Specifically, Lucas alleges that Hersch, Caldwell, and Ash "memorialized an express agreement to conspire in an exchange of e-mails, where Defendant Caldwell declares that 'we can put this on Lucas.'  They proceeded to act in furtherance of their agreement by denying her prescription medication and retaliated against Ms. Lucas." (¶ 123.)  All individually named Defendants allegedly "discussed, verbally and in writing, their course of unconstitutional conduct" and "collaborated, planned, and overtly acting [*sic*] in furtherance of their plan to violate Ms. Lucas's constitutional rights." (¶ 124.)

The Larimer County Defendants argue that Lucas's § 1983 conspiracy claim should be dismissed for failure to state a claim. (ECF No. 81 at 16.)  Such a claim requires pleading "specific facts showing an agreement and concerted action among defendants." (*Id.* (quoting *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 533 (10th Cir. 1998).)  According to the Larimer County Defendants, however, Lucas fails to make clear exactly who is alleged to have done what to whom, and thus fails to provide each individual with fair notice as to the basis of the claims against him or her. (*Id.*)  Instead, Lucas lumps "all Defendants" or "all individually named Defendants" into prohibited collective allegations. (*Id.*)

Specifically, the Larimer County Defendants point out that Lucas has failed to

allege any facts to support the allegation that Darling, Tim Hand, Kopp, or Lauren Hand were engaged in the conspiracy.  (*Id.* at 17.)  In addition, Larimer County Defendants note that Caldwell and Ash are mentioned only as participants in the aforementioned e-mail communications, and Caldwell is mentioned only as a respondent to an e-mail regarding the investigation of Lucas's medication shortages.  (*Id.*)  The Larimer County Defendants contend that the SAC does not allege wrongdoing by Caldwell and Ash, and that the e-mail communications of which they were a part do not demonstrate a conspiracy to deprive Lucas of her constitutional rights but are merely taken out of context and misquoted in an attempt to demonstrate a conspiracy.[14]  (*Id.* at 17–18.) Rather, the Larimer County Defendants assert Lucas's extraction of the phrase "we can put this on Lucas" "belies the infirmity of her factual pleading," which merely consists of conclusory facts of a concerted action.  (*Id.* at 18.)

In response, Lucas asserts it is the Larimer County Defendants "who are taking comments out of context as they only attached four pages of e-mails; failing to include, to the Court, all the relevant e-mails and correspondences referenced by Ms. Lucas in her [SAC]."  (ECF No. 84 at 10 (citing ¶¶ 46–56, 72–75).)  As such, Lucas argues she has stated a claim for conspiracy.  (*Id.*)

The Larimer County Defendants reply that Lucas fails to respond in any meaningful way to their argument that her conspiracy claim should be dismissed for failure to plead any specific, plausible facts showing an agreement and concerted

---

[14] The Larimer County Defendants point out that, contrary to the allegations in the SAC, Hersch was neither a sender nor a recipient of the e-mails in question, which the Larimer County Defendants attached as an exhibit to their Motion to Dismiss.  (ECF No. 81 at 18; ECF No. 81-1.)

action among them.  (ECF No. 87 at 10.)

"'To establish a prima facie claim of conspiracy under 42 U.S.C. § 1983, [a plaintiff] must make a factual showing for each of the following elements: (1) a shared conspiratorial objective (the agreement to deprive the [plaintiff] of a constitutional or statutory right); (2) concerted action by [the defendants]; and (3) an actual deprivation of rights.'"  *Chamberlain v. Dunker*, 2014 WL 3373554, at *2 (D. Colo. July 9, 2014) (quoting *Jorgensen v. Montgomery*, 2008 WL 216398 (D. Colo. Jan. 24, 2008)).  A plaintiff "must plead and prove not only a conspiracy, but also an actual deprivation of rights; pleading and proof of one without the other will be insufficient."  *Dixon v. City of Lawton*, 898 F.2d 1443, 1449 (10th Cir.1990).

In addition, a plaintiff must allege specific facts showing an agreement and concerted action among the defendants.  *Tonkovich*, 159 F.3d at 533 (citation omitted).  A plaintiff must demonstrate "a single plan, the essential nature and general scope of which was known to each person who is to be held responsible for its consequences."  *Fernandez v. Mora–San Miguel Elec. Co-op., Inc.*, 462 F.3d 1244, 1252 (10th Cir. 2006) (quoting *Snell v. Tunnell*, 920 F.2d 673, 702 (10th Cir. 1990)) (alteration incorporated).  "Conclusory allegations of conspiracy are insufficient to state a valid § 1983 claim."  *Hunt v. Bennett*, 17 F.3d 1263, 1266 (10th Cir. 1994) (citation omitted).

Here, Lucas's conspiracy claim fails for two reasons.  First, as explained above, Lucas has failed to plead an actual deprivation of her constitutional rights under the First or Eighth Amendments.  Second, Lucas's allegations are insufficient to show agreement and concerted action among the individually named Defendants.  Lucas's

allegation that "[t]here were express and implied agreements" and that "all of the individually named Defendants acted in furtherance of the agreement" is conclusory. (¶ 122.)  Similarly, her allegation that the individually named Defendants "discussed, verbally and in writing, their course of unconstitutional conduct" and that they "collaborated, planned, and overtly acted in furtherance of their plan" is conclusory. (¶ 124.)  This sentence is fine insofar as it summarily describes what is being alleged. But it conspicuously fails to allege any *facts* which constitute the described conduct. Such conclusory allegations do not contain sufficient facts that "might move the claim from sheer possibility to plausibility."  *Chamberlain*, 2014 WL 3373554, at *3.  Although the Court must draw reasonable inferences in Lucas's favor, it "'need not sift through [her] entire complaint in search of a coherent theory of [her] conspiracy claim.'"  *Id.* (quoting *Afola v. Corr. Corp. of Am.*, 2013 WL 2477126, *4 (D. Colo. June 10, 2013)).

The only allegation that names particular individuals is at paragraph 123, and that allegation involves only Hersch, Caldwell, and Ash.  (¶ 123.)  The Larimer County Defendants point out that the e-mails at issue do not even involve Hersch.  (ECF No. 81 at 17; ECF No. 81-1 at 1; ECF No. 87 at 10.)  While Lucas protests that the Larimer County Defendants have failed to provide all relevant e-mails, she included the quotation in her SAC without providing the underlying e-mails themselves.  *See GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997) ("if a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a

motion to dismiss").  As alleged, the statement on which Lucas relies does not demonstrate an agreement among all individually named Defendants to deprive Lucas of her constitutional rights or action in furtherance of that agreement.

Without explanation or further argument, Lucas states in her response that she "has sufficiently pleaded allegations to support her conspiracy claim" and cites paragraphs 46–56 and 72–75 of the SAC.  (ECF No. 84 at 10.)  Among other things, those allegations reiterate the alleged conspiratorial statement by Caldwell; state that Tim Hand and Hersch were "aware of systemic failures concerning the administration of medications . . . including the theft of Ms. Lucas's medication;" state that Tim Hand and Hersch were notified and provided evidence proving that pills were being diverted and that Lucas was not responsible for removing them; and describe Lucas's request for an audit of her pills to Kopp, her filing of a police report, and Deputy Hawks's investigation. (¶¶ 46–56.)  These allegations do not show agreement or actions in furtherance of an agreement to violate her constitutional rights.

Lucas also alleges that Lauren Hand falsified Lucas's medication intake form and forged Lucas's signature and that Tim Hand knew about Lauren Hand's history of substance abuse and addiction to prescription medication when she was hired at LCCC.  (¶¶ 72, 75.)  Similarly, these allegations do not show agreement or actions in furtherance of an agreement to violate her constitutional rights.

The Court thus grants LCPD's Motion to Dismiss with respect to these claims, and dismisses Lucas's § 1983 conspiracy claims against the individually named Defendants without prejudice.

25

4.     The Larimer County Defendants' Unadjudicated Arguments

Because the dismissal of Lucas's three claims on the aforementioned grounds is case-dispositive, the Court declines to address the Larimer County Defendants' other arguments, including that: the LCCCB and LCCC are not suable entities because they are departments of Larimer County (ECF No. 81 at 5–6); Lucas has failed to plead the personal participation of Darling and Tim Hand in any alleged constitutional violation (*id.* at 6–8); and Lucas has failed to plead any facts sufficient to establish municipal liability against Larimer County under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) (*id.* at 8–13).

Should Lucas decide to file a third amended complaint, she is, of course, free to reassert any non-frivolous claims she wishes.  However, should she seek leave to file an amended complaint, she should remain mindful that although the Court has not ruled on the aforementioned arguments, it has reviewed them, and found them to have some merit.  It would be prudent for Lucas to carefully consider the claims she chooses to reassert on amendment, keeping in mind that, based on the Larimer County Defendants' arguments, the Court has concerns about their viability as pled in the SAC.

**B.     LCPD's Motion to Dismiss**

1.     Monetary Damages Claims

LCPD argues Lucas's claims for monetary damages are barred by the Eleventh Amendment because LCPD is a component of the Eighth Judicial District of the State of Colorado, a state government agency.  (ECF No. 83 at 4–5.)

By contrast, Lucas argues that LCPD is not an arm of the state but instead is a county entity. (ECF No. 85 at 6.)  To reach this conclusion, she applies the four-factor

26

test set forth in *Steadfast Insurance Co. v. Agricultural Insurance Co.*, 507 F.3d 1250, 1253 (10th Cir. 2007), to determine if an entity is an "arm of the state."  Lucas contends that because she was directly sentenced to LCCC and under the supervision of LCPD, LCPD in its supervisory role is "properly characterized as a county entity."  (ECF No. 85 at 5–6.)

"If applicable, the Eleventh Amendment bars suits against states in federal court."  *Sutton v. Utah State Sch. for Deaf & Blind*, 173 F.3d 1226, 1231–32 (10th Cir. 1999) (citation omitted); *Kentucky v. Graham*, 473 U.S. 159, 169 (1985) ("Absent waiver by a State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court. . .")  Only a state or an arm of a state may assert the Eleventh Amendment as a defense to suit.  *Id.* at 1232 (citation omitted).

Despite Lucas's contentions, the Court agrees with LCPD that it is an arm of the state.  "The probation departments in each judicial district are arms of the judicial branch of the State of Colorado."  *Lawrence v. Blackman*, 2014 WL 7202857, at *4 (D. Colo. Dec. 17, 2014) (citing *People v. Snare*, 7 P.3d 1025, 1028 (Colo. App. 1999); Colo. Rev. Stat. § 16–11–208 (probation officers are appointed pursuant to Colo. Rev. Stat. § 13–3–305, which governs the appointment and removal of judicial branch personnel, and take an "oath of office as officers of the court")).  Further, it is "beyond dispute" that the judicial branch of the State of Colorado has Eleventh Amendment immunity from § 1983 claims.  *Id.* (citing *DeMillard v. Mun. of Denver, Colo.*, 2011 WL 900827, at *2 (D. Colo. Mar. 11, 2011); *Buhendwa v. Reg'l Transp. Dist.*,  2013 WL 1222307, at *3 n.9 (D. Colo. Mar. 22, 2013)).  Lucas does not dispute that LCPD is a

component of the Eighth Judicial District.  (ECF No. 85 at 5.)  Given this authority, the

Court finds that Lucas's claims against LCPD are barred by the Eleventh Amendment.[15]

The Court thus grants LCPD's Motion to Dismiss with respect to these claims,

and dismisses Lucas's § 1983 claims for monetary damages against LCPD with

prejudice.

2.    Declaratory and Equitable Relief Claims

LCPD argues Lucas's request for "declaratory relief and other appropriate

equitable relief" should be dismissed because she is no longer serving a community

corrections sentence, rendering any claims for declaratory or equitable relief moot.[16]

(ECF No. 83 at 5–6.)

Lucas does not respond to LCPD's argument that her claims for declaratory relief

have been rendered moot by her release from the community corrections facility.  (*See*

ECF No. 85; ECF No. 88 at 4 n.1.)

In *Green v. Branson*, the Tenth Circuit found that because a plaintiff was no

longer a prisoner in state custody, entry of declaratory judgment in the plaintiff's favor

"would amount to nothing more than a declaration that he was wronged, and would

have no effect on the defendants' behavior towards him."  108 F.3d 1296, 1300 (10th

Cir. 1997); *see also White v. State of Colo.*, 82 F.3d 364, 366 (10th Cir. 1996)

---

[15] Because the law on this issue is clear, the Court there is no need for the Court to separately engage in the *Steadfast* analysis.

[16] LCPD cites paragraphs 1 and 7 of the SAC at ECF No. 51 in connection with this argument.  (ECF No. 83 at 5.)  ECF No. 51 references an unredacted version of the SAC, and ECF No. 62 is a redacted version of the SAC.  However, upon review, the paragraphs cited in both docket entries do not contain requests for declaratory or equitable relief.  As far as the Court can tell, Lucas's claims for declaratory and equitable relief only appear perfunctorily in her Prayer for Relief.  (ECF No. 62 at 28.)

("although sovereign immunity will not bar [a plaintiff's] [§] 1983 claims for prospective injunctive relief, . . . any such claims must now be deemed moot, in light of plaintiff's subsequent release on parole . . . .").  A court lacks subject matter jurisdiction over moot claims.  *See  Bueno v. Chekush*, 355 F. Supp. 3d 987, 1001 (D. Colo. 2018) (citing *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1109 (10th Cir. 2010)).

As an initial matter, the Court notes that the SAC does not allege what declaratory or equitable relief Lucas requests.  (*See* ECF No. 62.)  The SAC contains no independent claims for declaratory or other equitable relief; rather, the only language in the SAC the Court can identify related to declaratory or equitable relief appears perfunctorily in the Prayer for Relief and merely states: "Plaintiff . . . requests that this Court enter judgment in their favor and against Defendants, and grant: (a) Appropriate relief at law and equity; (b) Declaratory relief and other appropriate equitable relief; . . . ."  (*Id.* at 28.)  Further, Lucas alleges that "At all relevant times, [she] is released from residential supervision and no longer resides at LCCC."[17]  (¶ 7.)  Given that Lucas has been released from the LCCC's custody and no longer resides there—combined with Lucas's failure to request declaratory and equitable relief in any substantive manner or respond to LCPD's argument on this issue—the Court finds that, to the extent they have been adequately pled, any declaratory and equitable relief claims are moot.

The Court thus grants LCPD's Motion to Dismiss with respect to these claims,

---

[17] This allegation appears to contain an error, because at the relevant times, Lucas was a resident of LCCC but is now a former resident of LCCC.  (*See* ¶ 1 ("Ms. Lucas is a former resident of LCCC.").)

and dismisses Lucas's § 1983 claims for declaratory and equitable relief against LCPD without prejudice.[18]

## IV. CONCLUSION

For the reasons stated above, the Court ORDERS as follows:

1.    The Larimer County Defendants' Motion to Dismiss (ECF No. 81) is GRANTED;

2.    Plaintiff's claims as to the Larimer County Defendants are DISMISSED without prejudice;

3.    The Larimer County Probation Department's Motion to Dismiss (ECF No. 83) is GRANTED;

4.    Plaintiff's claims as to the Larimer County Probation Department are DISMISSED in the manner set forth above; and

5.    Plaintiff may file a motion for leave to file a further amended complaint by **October 15, 2020**.

Dated this 22nd  day of September, 2020.

BY THE COURT:

William J. Martínez
United States District Judge

---

[18] LCPD also argues that Lucas fails to state claims upon which relief can be granted because she fails to allege direct involvement by LCPD or its employees in conduct that violated her constitutional rights, and that Lucas alleges no facts showing LCPD engaged in a custom, practice, or policy that resulted in the alleged constitutional deprivations.  (ECF No. 83 at 6–12.)  Because the Court finds that all claims against LCPD should be dismissed on the aforementioned grounds, the Court need not separately consider LCPD's Rule 12(b)(6) arguments.