IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:19-cv-01251-SKC

SHANNON LUCAS,

    Plaintiff,

v.

The BOARD OF COUNTY COMMISSIONERS OF THE COUNTY FOR LARIMER COUNTY COLORADO, et al;

    Defendants.

## DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT AND JURY DEMAND

COME NOW, the above-named Defendants, by and through their undersigned counsel of record, and pursuant to Fed. R. Civ. P. 12(b)(6), hereby move to dismiss all of Plaintiff's claims for the following reasons:

## STANDARD OF REVIEW

Under Rule 12(b)(6), a complaint must contain sufficient factual allegations to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court should not weigh potential evidence here, but assess whether a claim has been properly stated, presuming well-pled facts as true and construing them favorably to the non-movant. *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003); *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991). To that end, the Court first dismisses legal conclusions, bare assertions, and conclusory statements. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citation omitted). What remains must "plausibly suggest an entitlement to relief." *Id*. In turn, under Fed. R. Civ. P. 8,

1

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

## ARGUMENT

The Third Amended Complaint ("TAC") [ECF 119] maintains three claims for relief: a 1st Amendment retaliation claim; an 8th Amendment failure to provide medical care claim; and a § 1983 conspiracy claim. The first two claims are brought against all Defendants, and the last is brought against the individual capacity Defendants only.[1] All must be dismissed as follows.

### A.     The LCCCB and LCCC are not suable entities and must be dismissed

Under Colorado law, only municipalities and counties, not their various subsidiary departments, exist as "bodies corporate and politic" empowered to "sue and be sued." *Stump v. Gates*, 777 F. Supp. 808, 816 (D. Colo. 1991), *aff'd*, 986 F.2d 1429 (10th Cir. 1993) (quoting Colo. Rev. Stat. §§ 31-15-101(1)(a) & 30-11-101(1)(a)). As subsidiary departments of Larimer County, the LCCCB and LCCC cannot deprive individuals of their civil rights; rather, the acts of county employees, performed under color of state law and pursuant to a policy or custom of the county, subjects counties to liability. *Id.* Although Plaintiff attempts to plead around this reality by alleging that LCCC and LCCCB are "government bod[ies]" and "local government agenc[ies]," [ECF 119] at ¶¶11-12, the fact is that Colorado law defines a community corrections facility as "a facility

---

[1] As a threshold matter, all of the individually named Defendants here are sued in their individual and official capacities, as employees of the named agency Defendants. [ECF 119] at 5-6. Because it is well-established that an official capacity claim against an individual is the same as a claim against an entity, *see Cox v. Glanz*, 800 F.3d. 1231, 1254 (10th Cir. 2015) (citation omitted), any official capacity claims against the individual Defendants here should be dismissed with prejudice. *Romero v. Storey*, Civ. No. 10-00591 JP/LAM, 2010 U.S. Dist. LEXIS 160974, at *3-6 (D.N.M. Sept. 17, 2010) (dismissing redundant official capacity claims with prejudice, collecting cases).

used by a community corrections program … operated by a unit of local government." *See* C.R.S. § 17-27-102 (2.5) & (3). In turn, a unit of local government is defined as meaning "any county, city and county, city, town or service authority which may be established pursuant to section 17 of article XIV of the state constitution." C.R.S. § 17-27-102(8). Thus, because LCCCB and LCCC lack any legal identity apart from Larimer County, and neither department can sue or be sued, dismissal of all claims against LCCCB and LCCC is required.

### B.  Plaintiff has failed to plead the personal participation of Tim Hand.

Individual liability pursuant to § 1983 "must be based on personal involvement in the alleged constitutional violation." *Foote v. Spiegel*, 118 F.3d 1416, 1425 (10th Cir. 1997) (citation omitted). This is particularly true where a defendant, such as Tim Hand, is named in his role as supervisor because § 1983 does not authorize *respondeat superior* liability. *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011). Supervisory liability requires proof of three elements: 1) personal involvement; 2) sufficient casual connection; and 3) culpable state of mind. *Id.* "Personal involvement" requires an "affirmative link" between the supervisor and the described constitutional violation, *Dodds v. Richardson*, 614 F.3d 1185, 1195 (10th Cir. 2010), which cannot be established by "a supervisor's mere knowledge of his subordinate's conduct." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013) (citation omitted). Plaintiff must allege non-conclusory facts showing "the defendant set in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive the plaintiff of her constitutional rights." *Schneider*, 717 F.3d at 767. More pointedly, Plaintiff must show that Mr. Hand "acted knowingly or with 'deliberate indifference' that a constitutional violation would occur." *Dodds*, 614 F.3d at 1196 (citation omitted). Deliberate indifference requires the defendant

3

knowingly created a substantial risk of constitutional injury. *Id.* at 1205-06. Plaintiff's allegations fail to meet any of these requirements Plaintiff alleges no conduct demonstrating an affirmative link between Mr. Hand and any alleged retaliatory conduct in Claim One; the alleged deprivation of prescription medication in Claim Two; or the alleged conspiracy in Claim Three. *See* [ECF 119] at ¶¶81-82, 89-92. Indeed, Mr. Hand is not even referenced by name in the entirety of the Third Claim. *Id.* at 25-26. To the extent Plaintiff does expressly name Mr. Hand in any allegations, such allegations are not only conclusory, they, at best, only suggest that Mr. Hand must have possessed certain knowledge or was aware as a supervisor of his subordinates' behavior, *id.* at ¶¶3-5, 29, 43, 52, 56, 64, 69, & 72, which fails to "raise a right to relief above the speculative level," let alone establish a causal connection for liability. *Iqbal,* 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570); *see also Schneider*, 717 F.3d at 767. Further infirmity is revealed by Plaintiff's failure to allege any facts, conclusory or otherwise, that Mr. Hand set in motion the series of events she alleges deprived her of her constitutional rights, let alone did so with deliberate indifference.

In addition, Plaintiff pleads Mr. Hand's alleged involvement in an inclusive manner not specific to the actual actions of Mr, Hand himself. *See, e.g.*, [ECF 119] at ¶52 ("… in an effort to cover up obvious malfeasance … LCCC supervisors and staff, including but not limited to T. HAND …); ¶29 (same); ¶81 (same). Such pleading runs afoul of noticing defendants of "what the claims against them are and the grounds upon which they rest." *TV Communications Network v. ESPN, Inc.*, 767 F. Supp. 1062, 1069 (D. Colo. 1991).  This is because § 1983 claims "often include the government agency and a number of government actors sued in their individual capacities," and it is thus "particularly important … that the complaint make clear exactly who is alleged to have done what to whom" in order to provide Defendants fair notice, "as distinguished from

4

collective allegations against the [agency]." *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) (requiring plaintiff to "isolate the allegedly unconstitutional acts of each defendant"). Plaintiff has failed to do so here, and Mr. Hand must therefore be dismissed for failure to plead his personal participation in the alleged unconstitutional conduct.

### C. Plaintiff has failed to plead any facts sufficient to establish municipal liability.

Municipal entities cannot be held liable for the unconstitutional actions of their employees under a theory of *respondeat superior*. *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 405 (1997). "[I]t is when execution of a government's policy or custom … inflicts the injury that the government as an entity is responsible under § 1983." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). In that context, Plaintiff must plead both the existence of a municipal custom or policy and a direct causal link between the custom or policy and the violation alleged. *Myers v. Okla. Cnty. Bd. of Cnty. Commr's*, 151 F.3d 1313, 1316 (10th Cir. 1998). While an official "policy or custom" may be proven by the existence of a formally promulgated policy; well-settled custom or practice; final decision by a municipal policymaker; failure to train or supervise; or ratification of subordinates' actions by a final policymaker, *Schneider*, 717 F.3d at 770, such policy or custom must also be plausibly pled to be the "moving force" behind the violation alleged. *Brown*, 520 U.S. at 403-05. "Bare allegations standing alone cannot support a plausible inference" of either a municipal policy or custom resulting in constitutional deprivations, or a direct causal link between the policy or custom and the injury alleged. *Waller v. City & Cty. of Denver*, 2015 WL 1816371, at *7 (D. Colo. 2015) (citation omitted). Moreover, "rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employees." *Brown* at 405; *see also Schneider*, 717 F.3d at 770 ("causation element is applied

5

with especial rigor" when municipal liability is based on inadequate training, supervision, or hiring deficiencies). Then, the "policy or custom" must be pled to be "municipal action … taken with 'deliberate indifference'" to the plaintiff's rights. *Brown* at 407, 410-412. This culpability standard is "a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (internal quotes and citation omitted). Plaintiff's *Monell* claims appear to be premised upon three theories of liability: a custom or practice; failure to train and supervise; and ratification. In particular, Plaintiff summarily alleges a culture and practice of retaliation against LCCC residents who report a problem or file a grievance, and a custom and practice of deliberate indifference to Plaintiff's 8th Amendment rights. [ECF 119] at ¶¶83, 92. Plaintiff also summarily asserts that the entity Defendants failed to train employees on proper medication administration, and failed to adequately supervise staff's access to prescription medication. *Id.* at ¶¶96, 99. Finally, Plaintiff baldly asserts ratification of the alleged constitutional violations by failing to discipline employees. *Id.* at ¶81.

Such alleged custom must amount to a "widespread practice … so permanent and well settled as to constitute a custom or usage with the force of law." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988). Plaintiff may establish the "existence of such a continuing, persistent and widespread custom" by offering "evidence suggesting that similarly situated individuals were mistreated by the municipality in a similar way." *Carney v. City & Cty. of Denver*, 534 F.3d 1269, 1274 (10th Cir. 2008). Yet, the TAC is devoid of specific allegations of other instances of similar constitutional violations committed by LCCC employees. A plaintiff's failure to plausibly allege the existence of similar constitutional deprivations as to others gravely undercuts her claimed custom of constitutional violations. *See Carney*, 534 F.3d at 1274 (citing *Randle v. City of Aurora*,

69 F.3d 441, 447 (10th Cir. 1995)). And while Plaintiff does cite to a 2016 limited-scope audit regarding LCCC's compliance with standards for the residential program, [ECF 119] at ¶93 n. 11, that audit does not conclude, nor does Plaintiff engage in any further factual development to establish, that those instances cited by the audit resulted in a violation of any LCCC resident's constitutional rights. *See id.* In the absence of such facts, Plaintiff's assertions amount to mere conclusory claims of unconstitutional retaliation against LCCC residents for reporting problems at the facility, or unconstitutional denial or delay of prescribed medical treatment. *See* [ECF 119] at ¶¶83, 92. Put directly, this Court cannot infer <u>widespread</u> custom of similar unconstitutional violations based upon <u>unidentified</u> incidents. *See Rehberg v. City of Pueblo*, 10-cv-00261-LTB-KLM, 2012 WL 1326575, at *8 (D. Colo. Apr. 17, 2012). Thus, the TAC pleads <u>no</u> other instances of violations like those alleged here, thus dooming this theory of *Monell* liability.

With respect to Plaintiff's failure to train or supervise theory, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick*, 563 U.S. at 61. As with any *Monell* liability theory, a plaintiff must show that the alleged failure occurred with "'deliberate indifference' as to its known or obvious consequences." *Waller*, 932 F.3d at 1284 (quoting *Brown*, 520 U.S. at 407). More directly, a "plaintiff must prove the need for more or different training [or supervision] is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the [municipality] can be reasonably said to have been deliberately indifferent to the need for additional training [or supervision]." *Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996) (cleaned up). Thus, it is "ordinarily necessary" for "[a] pattern of similar constitutional violations" by employees improperly trained or supervised to be plausibly pled, in addition to the training or supervisory

7

deficiencies being alleged in a nonconclusory manner. *See Waller*, 932 F.3d at 1285, 1288-89 (cleaned up). Yet, as explained above, the TAC fails to identify other factual instances of similar constitutional violations committed by improperly trained or supervised LCCC employees or the additional or different training or supervision that should have occurred. Further, there are no allegations suggesting the consequences of the entity Defendants' alleged failure to provide specific training or supervision was so apparent that the "obviousness" could substitute for the pattern of constitutional violations necessary to establish municipal liability and did not result from factors other than the purportedly faulty training or supervision. *See Connick* at 63-64; *Waller*, 932 F.3d at 1288; *Schneider*, 717 F.3d at 774; *Murphy v. City of Tulsa*, 950 F.3d 641, 651-55 (10th Cir. 2019); *Barney v. Pulsipher*, 143 F.3d 1299, 1308 (10th Cir. 1998). While Plaintiff conclusorily states that a constitutional violation "was entirely foreseeable," [ECF 119] at ¶96, she fails to establish a pattern of similar constitutional violations to support this notion, and therefore fails to plausibly allege that the entity Defendants were deliberately indifferent to a need for specific training or supervision of LCCC employees. And even if Plaintiff could establish the deliberate indifference element, her claims fail because there is no causation. The TAC baldly concludes the "acts or omissions of all Defendants were moving forces and substantial significantly contributing proximate causes of Plaintiff's injuries." *Id.* at ¶101. Similarly vague and conclusory statements on causation are repeated elsewhere in the TAC, devoid of factual support, at ¶¶71, 78-81, 84, 97 & 100. Repetition of such allegations does not render them any less vague or strengthen their foundation. Plaintiff's allegations are therefore insufficient as a matter of law to plausibly establish causation. *City of Canton v. Harris*, 489 U.S. 378, 391 (1989) (causation requires a determination whether plaintiff's injury would have been avoided had the officer "been trained under a program

that was not deficient in the identified respect"). Plaintiff's failure to train or supervise claim accordingly fails under Rule 12(b)(6) analysis.

While a municipality may be liable under § 1983 if it ratifies an employee's unconstitutional conduct, *Praprotnik*, 485 U.S. at 127, to avoid dismissal a plaintiff must properly allege that the 'subordinate's position is subject to review by the municipality's authorized policymakers, … [and that] the authorized policymakers approve[d] the subordinate's decision and the basis for it.'" *Rehberg*, 2012 WL 1326575 at *9 (quoting *Melton v. City of Okla. City*, 879 F.2d 706, 724 (10th Cir. 1989)). To that end, Plaintiff fails to plausibly allege that any authorized policymaker for Larimer County ratified the conduct of any subordinate here. Instead, Plaintiff simply states, "Defendants' decisions were made by those with policymaking authority and were ratified by those in a position of power within the BOCC, LCCCB, and LCCC including T. HAND and HERSCH," allegedly "by failing to take appropriate corrective or remedial action to cure the patent malfeasance and retaliatory behavior that chilled Plaintiff's free speech." [ECF 119] at ¶¶72, 81. Such threadbare allegations simply fail to establish a *Monell* claim under a ratification theory. *See Rehberg*, *id.* Thus, Plaintiff's ratification claim must be dismissed.

**D.    Plaintiff's 1st Amendment claim is barred by *Heck v. Humphrey* and progeny.**

Plaintiff bases her 1st Amendment retaliation claim on the fact that she was disciplined for filing a false police report after filing an internal grievance threatening to file said report, discipline that was subject to a hearing and appeal by LCCC resulting in Plaintiff being "sentenced to restricted phone privileges, lockdown and to serve additional time—25 days—in the residential facility." [ECF 119] at ¶¶48-55, 70, 77-79. Plaintiff nowhere pleads that this disciplinary action has been reversed, expunged, set aside, or otherwise invalidated.

In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court established the now cemented doctrine that a state prisoner's claim for damages is not cognizable under 42 U.S.C. § 1983 if "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence," unless the prisoner can demonstrate that the conviction or sentence has previously been invalidated. *Heck*, 520 U.S. at 487. The Supreme Court then extended that doctrine to include challenges to disciplinary convictions in *Edwards v. Balisok*, 520 U.S. 641 (1997). There, the Court stated in no uncertain terms that § 1983 challenges to disciplinary actions affecting an inmate's sentence through loss of good time credits or extension of time served are equally barred by the *Heck* doctrine. *Balisok*, 520 U.S. at 645-46. Plaintiff alleges substantially similar grounds in her 1st Amendment retaliation claim as both plaintiffs did in *Heck* and *Balisok*. In *Heck*, plaintiff alleged that state officials conducted an arbitrary investigation, knowingly destroyed exculpatory evidence, and caused an illegal voice identification procedure to be used at the plaintiff's criminal trial. *Heck*, 512 U.S. at 644. In *Balisok*, plaintiff alleged that a disciplinary hearing officer concealed exculpatory witness statements, refused to ask specified questions of witnesses, and "intentionally denied" plaintiff the right to present evidence in his defense. *Balisok*, 520 U.S. at 644-45 (internal quotations omitted). Like the *Heck* and *Balisok* plaintiffs, a retaliation finding favoring Plaintiff would necessarily imply the invalidity of her disciplinary conviction and is therefore barred. Indeed, this Court already reached this exact holding in dismissing Plaintiff's 1st Amendment retaliation claim previously based just on her false police report filing; holding *Heck* and its progeny bars the claim when "a ruling that Lucas was retaliated against for exercising her constitutional right to free speech by filing a false police report would necessarily invalidate her disciplinary conviction … based on the police report" and Plaintiff "does not allege whether she

10

filed for habeas relief while incarcerated or appealed her [disciplinary] conviction in state court." [ECF 101] at 15-17. The TAC does not assert any well-plead facts curing this deficiency, and the dismissal's reasoning applies with equal force to the TAC's novel 1st Amendment retaliation claim based on Plaintiff's filing of an internal grievance alleging prescription medication theft and threatening to file a police report based thereon (for which she was later disciplined for falsely filing[2]). Finding retaliation for the grievance filing would thus necessarily imply the invalidity of Plaintiff's disciplinary conviction. *See id.* This claim must therefore be dismissed.

### E.     Plaintiff's 8th Amendment allegations fail to state a claim.

Plaintiff brings her second claim for relief against all Defendants. [ECF 119] at 21. The 8th Amendment's cruel and unusual punishment clause extends to unnecessary infliction of pain caused by prison officials' "deliberate indifference to serious medical needs of prisoners." *Al-Turki v. Robinson,* 762 F.3d 1188, 1192 (10th Cir. 2014) (quotation omitted). In turn, deliberate indifference includes both an objective and subjective component. *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005). The objective prong of the test examines whether the prisoner's medical condition was "sufficiently serious" to be cognizable under the 8th Amendment. *Mata*, 427 F.3d at 753. "A medical need is sufficiently serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the

---

[2] Plaintiff does not attach the Grievance to the TAC. A true and accurate copy is attached hereto as **Exhibit A**. The Court may consider documents referenced in a complaint without converting a motion to dismiss to a motion for summary judgment, if the documents are central to plaintiff's claims and their authenticity is not disputed. *See Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1103 (10th Cir. 2017); *Jacobson v. Deseret Book Company*, 287 F.3d 936, 941 (10th Cir. 2002) (citation omitted). Here, the TAC not only specifically references the grievance, but it is alleged to constitute 1st Amendment protected activity by Plaintiff and directly relied on as the basis for her retaliation claim, making the grievance central to the TAC.

necessity for a doctor's attention." *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000). The subjective component is met if the plaintiff shows a defendant "knew [of] a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006). However, more than mere negligence or medical malpractice is required for an 8th Amendment violation. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Perkins v. Kansas Dept. of Corrections*, 165 F.3d 802, 811 (10th Cir. 1999).

As a threshold matter, Plaintiff's 8th Amendment claim fails due to Plaintiff's failure to plead any facts establishing that she was in fact denied any medical care or treatment in this matter. At best, Plaintiff pleads that some Klonopin tablets were missing at some point, but Plaintiff fails to present any further factual development to connect the dots between the missing medication and a missed dose. [ECF 119] at ¶¶44 & 47. The TAC states no nonconclusory facts plausibly alleging a sufficient connection between Plaintiff allegedly not receiving a prescribed dose, LCCC staff stealing doses from her pill bottle, and each individual Defendant knowing that connection. *See id.* at ¶¶2, 4, 35-47, 59-70, 71-72. At the same time, Plaintiff's new theory of 8th Amendment violation based on her allegedly missing medication because of a false recording of her prescribed dosage in LCCC medical records is implausibly pled—particularly at this late litigation juncture—without identification of *who* falsely recorded the dosage, and by lumping all the individually named Defendants together through impermissible, conclusory group pleadings on their knowing disregard of Plaintiff's failure to receive prescribed medication based on a documentation error. *See id.* at ¶¶2, 4, 34, 39, 91-92, 96; *Montoya*, 662 F.3d at 1165-66; *Robbins*, 519 F.3d at 1249. At the same time, alleging that Plaintiff was forced to schedule a doctor's appointment to request an early refill of her medication because of her missing medication, [ECF 119] at ¶45, undercuts

Plaintiff's bald assertion that she missed numerous doses because of staff diverting her medication or falsely recording her dosage. And even if Plaintiff was able to establish that she missed doses as the result of staff diversion or falsely recording her dosage (which she cannot), temporary denials of medications are insufficient to establish a deliberate indifference claim. *Campbell v. Milyard*, 2010 U.S. Dist. LEXIS 77120, at *38, 2010 WL 3023368 (D. Colo. May 4, 2010); *see also Lane v. Klingler*, 25 F. App'x 781, 783-84 (10th Cir. 2001) (no 8th Amendment claim where pain medication denied for three hours); *Jackson v. Simmons*, 2001 WL 951008, at *5 (D. Kan. July 26, 2001) (no 8th Amendment claim where pain medication denied for one day). Plaintiff's decision to begin tapering off her Klonopin medication in consultation with her treating physician, *see* [ECF 119] at ¶58, does not amount to a denial of medical care.

Even then, the TAC does not plead facts showing that LCCC staff acted with criminal recklessness either in denying medication or in falsely recording the dosage, *see Farmer v. Brennan*, 511 U.S. 825, 837 (1994), thus rendering the 8th Amendment claim facially implausible. *See Strain v. Regalado*, 977 F.3d 984, 990 (10th Cir. 2020). No LCCC staff is properly alleged to have contemporaneously known Plaintiff's medication was being diverted such that she missed doses, or that dosage instructions were falsely recorded, yet ignored those missed doses or receipt of a lower dosage.[3] At worst, then, the TAC alleges mere negligence, not conscious disregard of providing adequate medical treatment. *See Strain*, 977 F.3d at 994, 997; *Key v. McLaughlin*, 2011 U.S. Dist. LEXIS 105587, at *22-25, 2011 WL 4369115 (D. Colo. 2011). As such, Plaintiff's 8th

---

[3] Only Defendant Ash is specifically alleged to have been involved in Plaintiff not receiving prescribed doses due to "refus[ing] to change Plaintiff's dosing instructions[.]" [ECF 119] at ¶38. At the same time, Ash is "[not] qualified to amend prescription medication dosing instructions," and is not alleged to have known that the dosing instructions were, in fact, erroneous or that the failure to up Plaintiff's dosage would cause her harm. *See* [ECF 119] at ¶¶36-39, 46, 91-92.

Amendment failure to provide medical care claim must be dismissed per Rule 12(b)(6).

### F.       Plaintiff fails to state a conspiracy claim under R. Civ. P. 12(b)(6).

Conspiracy claims under § 1983 require pleading "specific facts showing an agreement and concerted action among defendants." *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 533 (10th Cir. 1998).[4] More pointedly, in order to satisfy the exacting "*who* is alleged to have done *what* to *whom*" pleading standard under *Robbins*, 519 F.3d at 1250-51, a plaintiff is required to name each defendant *not only in the caption* of the complaint, *but again in the body of the complaint and to include ... a description of the acts taken by each defendant* that violated plaintiff's federal constitutional rights." *McCorkendale v. Norwood*, 2018 U.S. Dist. LEXIS 87685, at *8, 2018 WL 2388899 (D. Kan. 2018) (emphasis added). The TAC fails to meet this exacting standard at nearly every point, most particularly in pleading Plaintiff's conspiracy claim, by taking every opportunity to lump "all Defendants" or "all individually named Defendants" as acting "in concert" or a "concerted effort"—the very type of "collective allegations" proscribed by Supreme Court and Tenth Circuit authority. *See* [ECF 119] at ¶¶3, 5, 52, 56, 70, 78, 83, 91. In fact, Plaintiff fails to name or aver a single nonconclusory fact to support her allegation that any of the individual Defendants engaged in the conspiracy Plaintiff alleges. As such, her Third claim must be dismissed as to these Defendants.

### G.  Dismissal Without Further Opportunity to Seek to Amend is Appropriate

Plaintiff has long been on notice of the deficiencies addressed here, through extensive conferral with Defendants' counsel since the case's inception, *see* [ECF 114] at 2-4; [ECF 114-1]

---

[4] Of course, Plaintiff must also plead the deprivation of a constitutional right, which she has failed to do as demonstrated above, and her claim therefore fails on this ground as well. *Thompson v. City of Lawrence*, 58 F.3d 1511, 1517 (10th Cir. 1995) (citation omitted).

at 5-19; [ECF 63-1] at 5; [ECF 114-2] at 1, 4-17; [ECF 114-3] at 1-3, Defendants' motions to dismiss and opposition to leave to amend, *see* [ECF 63] at 6-12; [ECF 81] at 5-18, and dismissal of the Second Amended Complaint. *See* [ECF 101] at 11-26. Now, Plaintiff unashamedly asserts already dismissed claims with little more than repackaged facts. *Compare* [ECF 119] at ¶¶2-5, 24-70, 72, 74-85, 90-107 *with* [ECF 62] at ¶¶1-2, 38-81, 89-126, [ECF 23] at ¶¶1-2, 35-72, 78-107, *and* [ECF 2] at ¶¶1-2, 38-70, 76-88.  The TAC fails to cure any of these deficiencies despite being the fourth operative complaint in this case. Accordingly, Plaintiff's claims in the TAC should be dismissed with prejudice. On a Rule 12(b)(6) motion, a complaint failing to state a claim is generally subject to "dismissal with prejudice" where, as here, no amendment could cure the complaint's defects. *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006); *Curley v. Perry*, 246 F.3d 1278, 1282-83 (10th Cir. 2001). And while claims barred by *Heck* and *Balisok* should be dismissed without prejudice, *Fottler v. United States*, 73 F.3d 1064, 1065 (10th Cir. 1996), a plaintiff should not be allowed to replead such claims where, like here, the exercise would be futile—i.e., it would still be barred upon repleading. *See, e.g., Higgins v. City of Tulsa*, 103 F. App'x 648, 652 (10th Cir. 2004); *Sacoman v. Second Judicial DA*, 2020 U.S. Dist. LEXIS 8489, at *10-*11, 2020 WL 264410 (D.N.M. Jan. 17, 2020). The TAC's failure to assert any fact alleviating the *Heck/Balisok* bar to Plaintiff's 1st Amendment retaliation claim or more generally curing any deficiency in Plaintiff's pleadings despite her longstanding notice thereof and multiple opportunities to do so, establishes the futility of permitting such amendment.

## CONCLUSION

For the foregoing reasons, all claims against the above-named Defendants should be dismissed, without providing Plaintiff further opportunity to seek leave to amend.

15

Dated this 3rd day of September, 2021.

        *s/David M. Goddard*
        David M. Goddard
        Michael T. Lowe
        Daniel A. Jacobs
        Bruno, Colin & Lowe, P.C.
        1999 Broadway, Suite 4300
        Denver, CO  80202
        Telephone:  (303) 831-1099
        Facsimile:   (303) 831-1088
        dgoddard@brunolawyers.com
        mlowe@brunolawyers.com
        djacobs@brunolawyers.com
        *Attorneys for the Defendants in their official and individual capacities*

        *s/David P. Ayraud*
        David P. Ayraud
        224 Canyon Ave., Suite 200
        P.O. Box 1606
        Ft. Collins, CO 80522
        Telephone: 970-498-7450
        Telefax: 970-498-7430
        Email:  dayraud@larimer.org
        *Attorney for Defendants in their official capacities*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 3rd day of September, 2021, a true and correct copy of the foregoing **DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT** was filed electronically via the CM/ECF system and served to the following:

Jill M. Jackson
Law Office of Jill M Jackson
3801 E Florida Avenue, Ste 400
Denver, CO 80210
E-mail: jill@jilljacksonlaw.com

Benjamin W. Hartford
The Law Office of Benjamin Hartford LLC
650 S. Cherry St., Suite 1225
Glendale, CO 80246
Email: bhartford@gmail.com

Jaime N. Cowan
The Law Offices of Jaime Cowan, P. C.
3801 E. Florida Avenue, Ste. 400
Denver, CO 80210
E-Mail: jcdefense@gmail.com

Cole J. Woodward
Assistant Attorney General
Corrections & Law Enforcement Unit
1300 Broadway, 10th Floor
Denver, CO  80203
Email: cole.woodward@coag.gov

*s/ Julie Bozeman*
Julie Bozeman, Paralegal
Bruno, Colin & Lowe, P.C.

17